**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 20-cr-00109 (ABJ)** |
| **v.** | |
| **MICAH AVERY,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Mr. Avery defiled a monument of singular importance to this nation's history. Distracting from an otherwise peaceful protest, Mr. Avery crudely spraypainted "YALL NOT TIRED YET?" on a plinth in front of the Lincoln Memorial. His crime cost taxpayers almost $10,000 to clean. It distracted visitors and members of our community from the history and significance of the Lincoln Memorial. And it undermined the peaceful demonstration that Mr. Avery had been part of, inaccurately associating the dozens of other people there who did not commit crimes with Mr. Avery's offense.

For all the following reasons, the Government recommends a sentence of three years of probation and restitution in the amount of $9,440.

### BACKGROUND

On May 30, 2020, Mr. Avery was part of a group involved in a protest near the Lincoln Memorial. Mr. Avery walked away from the group and approached a plinth in front of the Memorial. There, Mr. Avery pulled out a can of spray paint and spray-pained the words "YALL NOT TIRED YET?" on the plinth.



U.S. Park Police officers were on scene monitoring the protest and observed Mr. Avery apply the spray paint. After a brief chase, Mr. Avery was apprehended.

The Lincoln Memorial was dedicated on May 30, 1922, and cost over $ 3 million to build, which represents over $ 50 million in current dollars.   Mr. Avery's caused approximately $9,440 in damages.

On May 23, 2025, Mr. Avery pled guilty to misdemeanor Destruction of Government Property in violation of 18 U.S.C. § 1361.

### ***The Pre-Sentence Investigation Report***

The Pre-Sentence Investigation Report (PSIR) summarizes Mr. Avery's history. *See* ECF No. 171. Mr. Avery is thirty-one. PSIR at 3, ¶ 50. He was born in North Carolina but raised between Chicago and Washington, D.C. PSIR at ¶ 52. Mr. Avery reported that while his family experienced financial hardships, his basic needs were met. *Id.* Mr. Avery graduated high school

and is currently enrolled in college. PSIR at ¶ 70. Mr. Avery is an army veteran and served in Korea. PSIR at ¶ 72. He was discharged in April 2019 due to medical reasons. *Id.*

Mr. Avery is single and has no children. PSIR at ¶ 53. Mr. Avery has a history of mental health issues. He previously attempted suicide and has been diagnosed with depression and anxiety. PSIR at ¶ 64. Mr. Avery is unemployed and receives disability benefits. PSIR at ¶ 75. Mr. Avery has no criminal history. PSIR at ¶¶ 39-42.

## **ARGUMENT**

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational

> or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> > > (i) issued by the Sentencing Commission . . .; and
> > > (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
> > (A) issued by the Sentencing Commission . . . and
> > (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent

4

permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR calculates a total offense level of 27 and Mr. Avery's criminal history to be Category I, resulting in a Guidelines imprisonment range of seventy to eighty-seven months' imprisonment. PSIR at ¶ 87. The maximum sentence for a misdemeanor violation of 18 U.S.C. § 1361, however, is one year. Therefore, the Guideline term of imprisonment is one year. *See* U.S.S.G. § 5G1.1(a).

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Mr. Avery to three years of probation. The Government also recommends that the Court order restitution in the amount of $9,440. This sentence acknowledges the seriousness of Mr. Avery's offense, compensates the Government for the cost of his crime, and provides deterrence to Mr. Avery and members of our community. It also recognizes Mr. Avery's service to our country, lack of criminal history, and mental health struggles.

I.      **The Nature and Circumstances of Mr. Avery's Offense.**

Mr. Avery brazenly spraypainted a monument of singular importance to our nation's

history.  He did so thoughtlessly and carelessly, displaying some vague message in childlike script. Visitors and members of our community who wished to view the memorial and reflect on its meaning, instead were forced to reflect on whatever Mr. Avery crudely attempted to communicate.

The harm he caused, though, is more significant than the damage to the masonry. Mr. Avery was initially in the area as part of a peaceful protest. Approximately 150 to 200 people were assembled to lawfully demonstrate and express grievances. His conduct distracted from the peaceful nature of that protest, undermining and diminishing the message of that protest, and allowing others to brand the peaceful members of that protest as violent or destructive.

**II.      Mr. Avery's History and Characteristics.**

Mr. Avery has no criminal history. He also served our country, discharged only due to health issues. And Mr. Avery suffers from mental health issues. Since this offense, he appears to be in stable treatment and is also taking college courses. His conduct here appears aberrational.

**III.     The Need for the Sentence Imposed.**

The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. A lengthy term of probation will deter Mr. Avery from committing future offenses. It will keep our community safe from Mr. Avery. It also signals that the destruction of important monuments is a serious matter that comes with significant consequences. At the same time, it will allow Mr. Avery to continue his mental health treatment, complete college, and hopefully contribute to our community. Finally, the restitution will compensate the Government for the cost of cleaning up Mr. Avery's crime.

## CONCLUSION

For all the foregoing reasons, the Government requests a sentence of three years of probation.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:        */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov